**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

ANNA C. NELSON,

                                  Plaintiff,                      5:23-cv-967 (BKS/MJK)

v.

FIRST UNUM LIFE INSURANCE COMPANY,

                                  Defendant.

_____

**Appearances:**

_For Plaintiff:_
Howard D. Olinsky
Edward A. Wicklund
Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, NY 13202

_For Defendant:_
Theodore M. Baum
McElroy, Deutsch, Mulvaney & Carpenter, LLP
820 Bausch and Lomb Place
Rochester, NY 14604

Louis P. DiGiaimo
McElroy, Deutsch, Mulvaney & Carpenter, LLP
4000 Route 66, Fourth Floor
Tinton Falls, NJ 07753

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

        Plaintiff Anna C. Nelson brought this action against Defendant First Unum Life

Insurance Company asserting claims pursuant to the Employee Retirement Income Security Act

of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). Presently before the Court are

Plaintiff's motion for summary judgment, (Dkt. No. 33), and Defendant's cross-motion for summary judgment, (Dkt. No. 38). The motions are fully briefed. (Dkt. Nos. 33-1, 38-1, 39). For the reasons that follow, the Court denies Plaintiff's motion and grants Defendant's motion.

## II.    FACTS[1]

### A.    The Policy

Defendant Unum issued a disability income insurance policy (the "Policy") to Plaintiff's former employer, Loretto Rest & Rehabilitation Center ("Loretto"), which funded an employee welfare benefit plan subject to ERISA. (Dkt. No. 38-3, ¶¶ 40–41; *see* Dkt. No. 39, at 5–7). The Policy's certificate section states that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Dkt. No. 38-4, at 13). The Policy also contains a sub-section labeled "Discretionary Acts," stating:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

(*Id.* at 41–42).

---

[1] The facts are drawn from the parties' statements of material facts, (Dkt. No. 35; Dkt. No. 38-3, ¶¶ 40–121), and the parties' responses to the statements of material facts, (Dkt. No. 38-3, ¶¶ 1–39; Dkt. No. 39, at 5–7), to the extent the facts are well-supported by pinpoint citations to the record, as well as the documents attached thereto and cited therein. When citing the administrative record, the Court refers to the document indicated at Dkt. No. 37 through Dkt. No. 37-4 as "R." The facts are construed in favor of the non-moving party on an issue. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

Under a sub-section labeled "How Does Unum Define Disability?," the Policy explains

that:

> You are disabled when Unum determines that:
> -you are limited from performing the material and substantial duties
> of your regular occupation due to your sickness or injury; and
> -you have a 20% or more loss in your indexed monthly earnings due
> to the same sickness or injury; and
> -during the elimination period, you are unable to perform any of the
> material and substantial duties of your regular occupation.

(*Id.* at 17). However, the Policy further states that "[a]fter 24 months of payments, you are

disabled when Unum determines that due to the same sickness or injury, you are unable to

perform the duties of any gainful occupation for which you are reasonably fitted by education,

training or experience." (*Id.*).

### B. Decision to Discontinue Benefits

Plaintiff, who had been employed by Loretto as a Nurse Practitioner, submitted a claim

for long term disability benefits indicating she had suffered injuries resulting from a motor

vehicle accident on November 8, 2019. (*See* R. 235–54). Plaintiff indicated she was receiving

treatment from providers including Dr. Matthew Sullivan (with a specialty in orthopedic trauma

surgery), Dr. Moustafa Hassan, and Dr. Mitchell Brodey (with a specialty in internal medicine).

(R. 239). Defendant, in a letter dated July 30, 2020, determined Plaintiff's "date of disability" to

be November 8, 2019, and approved Plaintiff for Long Term Disability benefits beginning May

6, 2020. (R. 487). Defendant explained that her benefits were approved because Plaintiff was

"unable to perform the material and substantial duties of [her] regular occupation as defined in

the policy." (R. 488).

In a letter dated November 10, 2021, Defendant reminded Plaintiff "that as of May 06,

2022, [her] claim [would] be evaluated under a different definition of disability" than had

applied during the first 24 months of benefits and summarized the change. (R. 1296–99). In

February 2022, Defendant requested Plaintiff's medical records from February 1, 2022 to the present, as well as information on Plaintiff's restrictions and limitations, from Plaintiff's provider Dr. Brodey. (R. 1445–46, 1450–51, 1457–58).

On a form that requested information regarding "current restrictions and limitations with focus on your patient's function," Dr. Brodey crossed out the portion labeled "Restrictions," defined as "what the patient should not do." (R. 1426). Under "Limitations," defined as "what the patient cannot do," Dr. Brodey wrote that Plaintiff was "not able to sit any length of time," "not able to tolerate lifting," "[n]eeds assistance to walk with medical device," and "[c]an not stand for long periods of time." (*Id.*). Dr. Brodey stated the "Begin Date" for the limitations as "11/8/2019" and the "End Date" as "not applicable." (*Id.*). The form is signed and dated February 22, 2022. (*Id.*).

Defendant sent Plaintiff a letter dated March 29, 2022, stating that Defendant was "in the process of evaluating [Plaintiff's] Long Term Disability claim to ensure [she] continue[d] to remain eligible for benefits as defined by the policy provisions outlined in this letter." (R. 1523–26). The letter stated that Defendant would request copies of Plaintiff's "medical records dated March 01, 2021, to the present from Upstate Rehabilitation," and copies of Plaintiff's "medical records dated May 26, 2021, to present from Dr. Sullivan." (R. 1523). The letter also instructed Plaintiff to contact Defendant if Plaintiff had "additional providers" that she "would like [Defendant] to consider," and warned that "[i]f the requested information is not provided by May 13, 2022, [Plaintiff's] Long Term Disability monthly benefits in the amount of $2,729.04 may be suspended and [her] claim may close." (R. 1524).

Defendant also sent two forms dated March 29, 2022, to Dr. Brodey and to Dr. Sullivan. (R. 1540–41, 1543–44). The forms asked each provider if he "would agree that Anna Nelson has

the ability to perform sedentary activity and whether you would release her to return to work full time in an occupation with the following physical demands": "[m]ostly sitting, may involve standing or walking for brief periods of time, with the ability to make positional changes, lifting, carrying, pushing, pulling up to 10 pounds occasionally" and "[f]requent[] handling, fingering, keyboard use, reaching upward and downward." (*Id.*). The form gave three options: "I Agree"; "I Do Not Agree"; and "No Comment." (*Id.*). Dr. Brodey marked the "I Agree" blank, signed, and dated the form March 30, 2022. (R. 1543). Dr. Sullivan marked the "I Agree" blank with a note stating, "only as it relates to her bilateral lower extremities that I am treating her for. She does require the use of a cane to ambulate for balance," signed, and dated the form April 4, 2022. (R. 1540).

Defendant sent a letter dated May 12, 2022, to Dr. Brodey asking if Defendant could request a copy of the office visit notes for May 4, 2022, and asking whether Dr. Brodey was "still providing the same opinion from March 30, 2022?" (R. 2075–76). Dr. Brodey returned the form and checked "Yes." (R. 2092).

Defendant sent another letter, dated May 31, 2022, reminding Plaintiff of the upcoming change in how her claim will be evaluated, stating that "[a] recent review of [her] claim indicates that [she] may no longer meet the policy's definition of disability." (R. 2131). Defendant informed her that her "claim is currently being paid under Reservation of Rights while [Defendant] review[s] the received medical records." (*Id.*).

In a letter dated June 21, 2022, Defendant informed Plaintiff that her benefits would be discontinued (the "Denial Letter"). (R. 2193–99). Defendant summarized the information supporting its decision, and included the following explanation of why "the available medical

information does not continue to support that [Plaintiff is] precluded from returning to work performing a sedentary occupation":

- You stopped working in 2019 after injuries sustained after an automobile accident. Your leg was broken. You had right ankle surgery and use of a cane to ambulate for balance. In 2021 you had hardware removal in your right ankle. You still are reporting ankle pain which may be due to post-traumatic arthritis.
- Your office visit notes documented normal physical exams with mild decreased range of motion in your neck. Your MRI from December 2021 noted you had a 2 level fusion but no other abnormalities. Your treatment plan was to complete acupuncture and trigger point injections.
- Dr. Sullivan and Dr. Brodey both released you to return to work performing the demands of a sedentary occupation.
- You underwent a hernia surgery in May 2022 with Dr. Hassan. Dr. Hassan's office indicated you were able to perform the demands of a sedentary occupation. Dr. Hassan's office also advised that you should not lift over 15 pounds during your recovery period. A sedentary occupation does not require you to lift over 15 pounds.
- Your physical exam findings and intensity of management are not consistent with your reported symptoms. The information in your file does not support that you would be precluded from performing a sedentary occupation on a full time basis.

(R. 2194–95). The Denial Letter then stated that Defendant "reviewed [Plaintiff's] claim vocationally and identified" the occupations of triage nurse and nurse consultant as "gainful occupations that [she] can perform within the [specified] restrictions." (R. 2195). Ultimately, the Denial Letter found that "based on [Defendant's] review, the information in [Plaintiff's] claim file indicates [she is] not precluded from performing the duties of alternative, gainful occupations" and that Plaintiff "no longer meet[s] [the] policy's definition of disability." (R. 2196). The Denial Letter also informed Plaintiff of her right to request an appeal of the decision and provided information on the appeals process. (R. 2197–98).

### C.     Plaintiff's Appeal

Plaintiff's counsel sent Defendant an "Appeal of Denial of Long-Term Disability Benefits" (the "Appeal Letter") dated December 19, 2022. (R. 2240–44). Plaintiff attached a "Medical Source Statement" from Dr. Sullivan and a copy of a "Functional Capacity Evaluation" (FCE) to the Appeal Letter. (R. 2246–47, 2250–75). Dr. Sullivan's statement, signed and dated November 14, 2022, listed Plaintiff's symptoms as "immediate pain to right & left leg, unable to bear weight to bilateral lower extremities" and stated the following in response to a question asking for "a short description of the primary impairment(s) that would interfere with [Plaintiff's] ability to work": "pain in bilateral ankles make it difficult for patient to complete ADLs, which includes walking distances." (R. 2246). In response to a question asking to estimate Plaintiffs' "functional limitations if [she] were placed in a competitive work situation" (including with respect to sitting, standing, walking, lifting and carrying weights, and pushing and pulling), Dr. Sullivan wrote "defer to functional capacity exam." (R. 2246–47).

Plaintiff's FCE was completed July 28, 2022, by Craig A. Peterson, P.T. (R. 2252). The FCE concluded that Plaintiff could occasionally, defined as 1–33% of a day or 0 to 100 repetitions per day, engage in sitting, standing, walking, bending, and reaching. (R. 2251). The FCE concluded that Plaintiff was "unable to work." (*Id.*). Under a section labeled "Summary of Observed Distracted Movement Patterns," the FCE stated that Plaintiff's "movement patterns did not change during the remainder of the evaluation, therefore, the results of the repetitive movement tests are considered valid." (R. 2258). The FCE also found that Plaintiff's "movement patterns and behavior correlate with the pain profiles" and that "[m]inimal symptom exaggeration appears to exist." (R. 2271). With respect to her Blankenship Behavioral Profile, the FCE explained that:

> Ms. Nelson appeared to exhibit minimal symptom exaggeration today for this test. Results of her inappropriate illness behavior profile were equivocal. She passed 61.0% of her validity criteria, this results in a validity profile which is EQUIVOCAL indicating partial submaximal effort. Therefore the results of this examination must be used cautiously for her medical management or vocational planning.

(R. 2274).

In her Appeal Letter, Plaintiff made four points in support of her position that she was unable to perform even a sedentary occupation: first, that the "FCE indicates inability to perform sedentary work"; second, that "the Denial Letter cited an opinion by Dr. Sullivan indicating that [Plaintiff] was released to return to sedentary work," but that the opinion "was restricted to consideration of bilateral lower extremity issues," and that Dr. Sullivan had issued a new opinion deferring to the limitations found in the FCE; third, that "the Denial Letter cited an opinion by Dr. Brodey indicating that [Plaintiff] was released to return to sedentary work" despite a contrast between this opinion and Dr. Brodey's earlier description of Plaintiff's limitations; and fourth, that "the Denial Letter stated that [Plaintiff's] physical exam findings and intensity of management were not consistent with her reported symptoms," but Plaintiff was then "receiving neck injections,[2] and these turned out to be ineffective," and additionally, that the Denial Letter's citation to "normal physical exams" did not address evidence from Plaintiff's January 14, 2022 electromyogram "showing unchanging left C7 radiculopathy and ongoing upper back pain" and a January 6, 2022 note indicating "painful, restricted cervical spine motion." (R. 2241–44).

Defendant sent Plaintiff's counsel a letter dated December 21, 2022, stating that Defendant received the appeal and attached information and requesting a response as to whether Plaintiff would agree to Defendant's plan "to return this new information back to the Benefits

---

[2] Plaintiff received neck injections from Dr. Renee Melfi, M.D., on April 28, 2022. (R. 2119).

Center for the Disability Benefits Specialist to determine if the new information changes their previous decision." (R. 2281). Defendant also sent Plaintiff's counsel a letter dated December 22, 2022, confirming the receipt of Plaintiff's appeal and requesting Plaintiff sign and date an "Authorization to Collect and Disclose Information." (R. 2285–86).

Defendant sent Plaintiff's counsel a letter dated January 5, 2023, stating that "[t]he Benefit Center determined restrictions and limitations that would limit [Plaintiff] from performing gainful sedentary demand work were not supported beyond June 21, 2022," and enclosing new information "considered, relied upon or generated during the review process." (R. 2307–08). The letter also informed Plaintiff's counsel of the "right to review and respond to this new information and/or rationale." (R. 2307).

The new information consisted of an "Appeals Physician Written Review" authored by Howard Grattan, M.D., Board Certified in Physical Medicine and Rehabilitation. (R. 2291–94; *see* Dkt. No. 35, ¶ 18; Dkt. No. 38-3, ¶ 18). Dr. Grattan "reviewed all the medical and file information and considered the claimant's medical conditions, both individually and in aggregate, and the treating providers' opinions" and concluded "[w]ith a reasonable degree of medical certainty, the medical evidence does not support restrictions and limitations that would preclude the claimant from performing" the occupational demands of sedentary work "as of 06/22/22." (R. 2291). Dr. Grattan provided an "Analysis/Rationale" explaining how he came to his conclusions, some of which included: that "[s]trength is full in the upper and lower extremities except for the bilateral deltoids at 4/5"; that Plaintiff "is alert and oriented X.3"; that "[r]ecent and remote memory is intact"; that "[s]trength in the bilateral deltoids is only mildly impaired and would not preclude the ability for sedentary work"; that her "level of self-reported limitations is not consistent with the examination findings"; that "she has reported improvement

in pain levels"; that [a]lthough she is using an assistive device for ambulation this would not preclude a sedentary level of activity"; that the FCE stated "she was unable to perform even at a sedentary level however examination findings must also be heavily weighed given partial submaximal effort"; and that the "[f]indings were overall within functional range and not consistent with her self-reported limitations." (R. 2294).

In her "Response to Proffer of New Opinion," dated January 23, 2023, Plaintiff's counsel asserted that Dr. Grattan's opinion failed to provide "meaningful support for its conclusions." (R. 2322–34). Specifically, Plaintiff argued: that "Dr. Grattan mentions full strength in the upper and lower extremities, save for the bilateral deltoids, but the [FCE] showed different findings, including that muscle strength was poor in the right gastric soleus, right tibialis anterior, right extensor hallucis longus, and right peroneals";  that "[w]hile Dr. Grattan highlighted the fact that the FCE noted only passing 61% of the validity criteria, he downplayed the FCE's observation that Ms. Nelson did not have improvement in movement patterns with distraction or pain out of proportion to movement patterns, which seem to be important to specific tests like strength testing"; that "Dr. Grattan notes that Ms. Nelson's Appeal Letter . . . mentioned that the electrodiagnostic studies showing left C7 radiculopathy were not considered," but "Dr. Grattan does not go on to provide any analysis of the electrodiagnostic studies"; and that "Dr. Grattan simply concluded that the reported limitations were not consistent with the examination findings, but he does not offer any explanation for this conclusion." (R. 2322–23). Additionally, Plaintiff argued that Defendant should place more value on the FCE than on Dr. Grattan's opinion because Mr. Peterson, who conducted the FCE, "was able to observe first hand Ms. Nelson's presentation, and determine that, despite minimal concerns of exaggeration, Ms. Nelson was unable to perform sedentary work." (R. 2323).

On January 26, 2023, Defendant issued a letter advising Plaintiff that it was upholding its initial decision finding Plaintiff no longer was considered disabled under the Policy as of June 22, 2022 (the "Uphold Letter"). (R. 2328–35). In the Uphold Letter, Defendant summarized the initial claim decision and stated as its "Appeal Decision" that it "determined the decision on the claim is correct." (R. 2328–29). It then discussed the reason for its decision and explained the next steps available to Plaintiff if she disagreed with the determination. (R. 2329–34).

## III.    STANDARD OF REVIEW

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

Where, as here, both parties have filed motions for summary judgment, "the court must evaluate each party's motion on its own merits." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)). The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden by showing that the nonmoving party has "'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is

appropriate where the nonmoving party has "'failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))). If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. NW Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.     DISCUSSION

### A.     Standard of Review of Denial of Benefits Claims

While "ERISA does not itself prescribe the standard of review for challenges to benefit eligibility determinations," "[t]he Supreme Court . . . has indicated that plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008) ("[I]n cases in which an abuse of discretion standard of review applies, because written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." (internal quotation marks omitted) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995))).

However, "[e]ven when the plan confers such discretion, [a court] review[s] de novo those cases in which a plan 'fail[s] to comply with the Department of Labor's claims-procedure regulation[s],' unless that failure 'was inadvertent *and* harmless' with regard to the claim at issue." *In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018) (quoting *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d Cir. 2016)). "The plan 'bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it.'" *Halo*, 819 F.3d at 58 (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)).

In this instance, and as Defendant notes, (Dkt. No. 38-1, at 19), the Policy grants discretionary authority to Defendant to make benefit determinations, (*see* Dkt. No. 38-4, at 13, 41–42). Plaintiff does not dispute that the Policy would normally grant discretionary authority,

(*see generally* Dkt. Nos. 33-1, 39), but argues that Defendant failed to comply with 29 C.F.R. § 2560.503–1, the Department of Labor's claims procedure regulation, and thus that a *de novo* standard of review applies, (Dkt. No. 33-1, at 11–14; *see also* Dkt. No. 39 at 1–3). Defendant responds that it "fully complied with" the regulations and that therefore "there is no cause to modify the arbitrary and capricious standard of review." (Dkt. No. 38-1, at 23). Accordingly, the Court must first determine whether Defendant complied with the claims procedure regulation to find what standard of review is appropriate here.

### B.    Compliance with Claims Procedure Regulation

#### 1.    29 C.F.R. § 2560.503–1(h)(2)(iv)

Plaintiff specifically asserts that Defendant did not comply with the claims procedure regulation because "Plaintiff submitted comments raising multiple concerns, which [Defendant] did not consider in its January 26, 2023 letter denying benefits, despite the requirement of 29 C.F.R. § 2560.503–1(h)(2)(iv) to provide for a review that took into account all comments and other information submitted by Plaintiff relating to the claim." (Dkt. No. 33-1, at 12 (internal citation omitted)). Defendant argues that "all the evidence was considered" and that Plaintiff "has not established a procedural violation." (Dkt. No. 38-1, at 24 (citing *Hinchey v. First Unum Life Ins. Co.*, No. 17-cv-8034, 2020 WL 1331898, at *16, 2020 U.S. Dist. LEXIS 49703, at *48 (S.D.N.Y. Mar. 20, 2020)); *see Hinchey*, 2020 WL 1331898, at *16, 2020 U.S. Dist. LEXIS 49703, at *48 ("[D]istrict courts that have considered the issue agree that a plaintiff must make the initial showing that a plan violated the DOL's regulations before shifting any burden onto the plan administrator." (citations omitted)).

Except in certain circumstances not relevant here, "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide for a review

that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503–1(h)(2)(iv).

Plaintiff first contends that Defendant failed to take into account her comments regarding Dr. Grattan's assessment of the FCE, including that (1) Dr. Grattan "highlight[ed] the fact that the FCE noted only passing 61% of the validity criteria and downplay[ed] the fact that the FCE observed specific relevant validity findings, such as those showing *no* pain out of proportion to movement patterns *nor* improvement in movement patterns with distraction, that were more relevant to specific exam findings," and that (2) Dr. Grattan "stat[ed] that Plaintiff had full strength in the upper and lower extremities save for the deltoids, while the FCE included strength testing showing poor muscle strength in the right gastric soleus, right tibialis anterior, right extensor hallucis longus, and right peroneals." (Dkt. No. 33-1, at 12–13 (citations omitted)). Plaintiff argues that instead, Defendant "simply re-iterated the notation concerning 61% of the validity criteria without addressing Plaintiff's comments at all," and therefore failed to comply with 29 C.F.R. § 2560.503–1(h)(2)(iv). (*Id.* at 13).

Plaintiff next argues that she "submitted comments to [Defendant] explaining that Dr. Grattan failed to offer any analysis of certain evidence, including the 2022 Electromyogram and Nerve Conduction Study (EMG/NCS), Dr. Melfi's failed trigger point injections, or Plaintiff's activities of daily living." (*Id.* (citation omitted)). Plaintiff explains that Defendant "stated that the EMG/NCS would not be expected to prelude sedentary work, but (a) [Defendant] offers no reason or support for this assertion and (b) [Defendant] did not respond to the heart of Plaintiff's comment, namely, that Dr. Grattan's review did not did not [sic] consider all relevant evidence, including the EMG/NCS and Dr. Melfie's [sic] failed trigger point injections." (*Id.* (citations

omitted)). Additionally, Plaintiff argues that "the EMG/NCS exists alongside other evidence suggesting that the EMG/NCS–especially its confirmation of radiculopathy–is perfectly compatible with disabling limitations" and that "Dr. Melfi noted radiculopathy as part of the first two diagnoses relevant to her note showing positive examination results related to neck/upper back issues, and Dr. Melfi's note appears perfectly consistent with the limitations in maintaining positions recognized by Mr. Peterson" in the FCE. (*Id.* (citations omitted)). As a result, Defendant's "simple statement that the EMG/NCS would not be expected to preclude sedentary work does not satisfy" the claims procedure regulation. (*Id.* at 13–14).

Defendant's Uphold Letter contains a multi-page summary of the information supporting its decision, followed by a section labeled "Our Response to Your Concerns." (R. 2329–32). In the response section, it confirmed that Defendant considered the FCE "along with other available medical data," and explained why it discounted the FCE's findings. (*Id.*). Likewise, the response directly referred to the EMG/NCS and stated that "[t]his finding would not be expected to preclude your client from engaging in sedentary demand work." (*Id.*). Plaintiff cites *Aitken v. Aetna Life Ins. Co.*, for the proposition that "[i]n order for an insurance company to be deemed to have taken something into account, there must be evidence thereof," No. 16-cv-4606, 2018 WL 4608217, at *14–15, 2018 U.S. Dist. LEXIS 164008, at *38–43 (S.D.N.Y. Sept. 25, 2018) (Dkt. No. 39, at 1–2 (internal citation omitted)). In *Aitken*, however, the defendant failed to demonstrate that it took into account a vocational report the plaintiff argued should have been considered. Here Defendant explicitly referenced Plaintiff's concerns and explained Defendant's assessment of the evidence. While it is true that this section did not reference every concern Plaintiff raised, Plaintiff does not cite case law indicating the claims procedure regulation

requires Defendant to do so. Accordingly, the Court does not find that Defendant failed to take into account Plaintiff's comments in violation of Section 2560.503–1(h)(2)(iv).[3]

### 2.    29 C.F.R. § 2560.503–1(j)(6)(i)

Plaintiff also argues that Defendant failed to comply with 29 C.F.R. § 2560.503–1(j)(6)(i). (Dkt. No. 33-1, at 18). Plaintiff states that in violation of this regulation, the Uphold Letter "did not duly explain its disagreement with Mr. Peterson's FCE finding that Plaintiff could not perform sedentary work (including the FCE's restriction to occasional sitting and standing." (*Id.*). Defendant does not specifically discuss its compliance with this provision of the claims procedure regulation in its briefing. (*See generally* Dkt. No. 38-1).

29 C.F.R. § 2560.503–1(j) relates to the "[m]anner and content of notification of benefit determination on review," and imposes specific requirements for what a notification of an adverse benefit determination must "set forth." Section 2560.503–1(j)(6)(i), which refers to "the case of an adverse benefit decision with respect to disability benefits," requires the notification contain "[a] discussion of the decision, including an explanation of the basis for disagreeing with or not following":

> (A) The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant; [and]
> (B) The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's

---

[3] Plaintiff also later argues that the same provision of the claims procedure regulation was violated when Defendant's Uphold Letter "re-iterated a flawed analysis of opinions from Dr. Sullivan and Dr. Brodey" in spite of "Plaintiff's discussion of the issue in her Appeal Brief." (Dkt. No. 33-1, at 20 (citation omitted)). Plaintiff does not argue in this section that any information was not taken into account in violation of Section 2560.503–1(h)(2)(iv), but rather, expresses disagreement with the ultimate decision. (*See id.* at 20–21). This is not sufficient to establish a procedural violation. *See Halberg v. United Behavioral Health*, 408 F. Supp. 3d 118, 140 (E.D.N.Y. 2019) ("ERISA does not require that an administrator defer or give special weight to a plaintiff's conclusions or those of his treating physicians; rather, the administrator need only give the plaintiff's submissions fair consideration. Where an administrator has afforded such consideration to a claimant's submissions, the fact that it does not agree with their conclusions does not deny the claimant a full and fair review." (quoting *Capretta v. Prudential Ins. Co. of Am.*, No. 16-cv-1929, 2017 WL 4012058, at *4, 2017 U.S. Dist. LEXIS 139080, at *9–10 (S.D.N.Y. Aug. 28, 2017))).

> adverse benefit determination, without regard to whether the advice
> was relied upon in making the benefit determination.

29 C.F.R. § 2560.503–1(j). As Plaintiff herself acknowledges, (*see* Dkt. No. 33-1, at 18), the

Uphold Letter contains a discussion of the FCE, (R. 2332). This discussion addresses why

Defendant decided to discount the FCE, including that it "reflects a partial submaximal effort

with only 61% of validity criteria," that "[w]hile the FCE concluded [Plaintiff] was unable to

perform even at a sedentary level, the findings must be used cautiously given the submaximal

effort," and that Dr. Grattan "did not find support for restrictions and limitations that would have

limited [Plaintiff] from performing activities consistent with sedentary demand work at the time

benefits ended." (*Id.*). Plaintiff may not agree with Defendant's evaluation of the evidence, but

Plaintiff does not cite any case law that suggests such an explanation would not qualify as a

sufficient discussion for purposes of the claims procedure regulation. The Court therefore does

not find that Defendant violated Section 2560.503–1(j)(6)(i).

As Plaintiff has not successfully established a violation of the claims procedure

regulation, the Court will review the denial of benefits under an arbitrary and capricious

standard.

## C.    Denial of Benefits

Plaintiff argues that Defendant "breached its fiduciary duties and erred in its evaluation

of Plaintiff's disability claim by failing to present reason or substantial evidence for rejecting

Plaintiff's contentions on appeal." (Dkt. No. 33-1, at 16). In response, Defendant states that its

"determination that [Plaintiff] can perform a sedentary occupation is supported by substantial

evidence in the record, including the opinions of her treating physicians, and should be upheld."

(Dkt. No. 38-1, at 19).

"Under the arbitrary and capricious standard of review, [a court] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan*, 52 F.3d at 442 (citation omitted); *see also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The question before a reviewing court under this standard is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." (internal quotation marks omitted) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974))). "Substantial evidence in turn 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker] . . . requires more than a scintilla but less than a preponderance.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)).

In upholding the decision on appeal, Defendant referred to Dr. Grattan's report and his determination that he "did not find support for restrictions and limitations that would limit [Plaintiff] from performing sedentary demand work activities at the time benefits ended." (*See* R. 2329). The Uphold Letter than summarized findings from the report, including evidence of symptom improvement, (R. 2330 (April 7, 2022 physical therapy note indicating "client's pain level was zero out of 10," "[s]he was in no acute distress and using a straight cane," and "[t]herapeutic exercises were improving her range of motion, strength, and overall functionality")), normal exam findings, (*id.* (May 4, 2022 exam with Dr. Brodey "revealed full strength and range of motion" and "[s]he was alert and oriented times three")), and Dr. Brodey's approval of her ability to engage in sedentary work, (*id.* ("In March 2022 and May 2022, Dr. Brodey confirmed [Plaintiff's] ability to perform full-time sedentary demand work.")). In the Uphold Letter, Defendant further explained that Plaintiff's "history of cervical fusion surgery

does not limit her from performing sedentary demand activities," that "[h]er strength is full in the upper and lower extremities except for the bilateral deltoids at four out of five," that "[s]he is alert and oriented with recent and remote memory intact," that her "[s]trength in the bilateral deltoids is only mildly impaired and would not limit her from performing sedentary demand activities," and that while "[s]he reported difficulties with ADLs and inability to exercise" and "described difficulty reading due to inability to bend her head forward," "[t]his level of self-reported limitation is not consistent with the exam findings." (R. 2331). The Uphold Letter also noted that Plaintiff "has reported improvement in pain levels" and that "[t]he use of an assistive device for ambulation would not limit her from performing sedentary demand work." (*Id.*).

Substantial evidence supports the Defendant's determination that Plaintiff can perform sedentary work and thus that benefits may be denied. While the Court agrees that there is also evidence in the record supporting Plaintiff's position, "the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious." *Johnson v. Hartford Life and Accident Ins. Co.*, Nos. 23-1140, 24-957, 2025 WL 573687, at *2, 2025 U.S. App. LEXIS 4017, at *5 (2d Cir. Feb. 21, 2025) (summary order) (quoting *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015)).

Plaintiff provides two reasons why the Uphold Letter's determination is an abuse of discretion. First, Plaintiff argues that the Uphold Letter did not sufficiently explain its rejection of the FCE's conclusion because: (1) "the issues with validity were 'equivocal' findings on the validity profile and inappropriate illness behavior profile, which need to be balanced against" other indicators; (2) "the most significant portions of the FCE were directly supported by related observations of validity, without simply relying on the final conclusion or the Blankenship

Behavioral Profile"; and (3) "the invalid criteria found outside of the Blankenship Behavioral Profile was limited to" certain categories of testing. (Dkt. No. 33-1, at 18–20).

In discussing the FCE, the Uphold Letter stated the following in its summary of the information supporting its decision:

> The July 28, 2022 Functional Capacity Evaluation (FCE) Noted [sic] your client is unable to work and does not meet sedentary physical demand capabilities. She was able to occasionally push 40 pounds and frequently push 20 pounds and was unable to pull. She was able to carry 3.5 pounds occasionally, overhead lift 1 pound occasionally and shoulder lift 3.5 pounds occasionally. She was not able to torso lift. She was able to occasionally sit, occasionally stand, and occasionally walk as well as occasionally bend and reach. She was not able to squat, kneel, crawl or climb. She exhibited minimal symptom exaggeration. The results revealed 61% validity criteria which equates to partial sub maximal effort. The results of the examination must be used cautiously for her medical management or vocational planning.

(R. 2331). And, as previously explained, in response to Plaintiff's concerns as expressed in the Appeal, the Uphold Letter stated that while the "FCE was considered," it "reflects a partial submaximal effort with only 61% of validity criteria," noted the FCE's own finding that "the findings must be used cautiously given the submaximal effort," and concluded that "[t]he medical consultant did not find support for restrictions an limitations that would have limited [Plaintiff] from performing activities consistent with sedentary demand work at the time benefits ended." (R. 2332).

Plaintiff does not cite to any case law indicating Defendant's explanation for discounting the FCE's conclusion is inadequate. Moreover, while Plaintiff provides multiple reasons why the validity criteria findings could themselves be discounted, (*see* Dkt. No. 33-1, at 18–20), as Defendant notes, (*see* Dkt. No. 38-1, at 20), "the question is not whether the record would have permitted a plan administrator to find otherwise, but whether the record compelled the different

conclusion urged by" the plaintiff, *Kruk v. Metro. Life Ins. Co.*, 567 Fed. App'x 17, 20 (2d Cir.

2014) (summary order). Defendant's decision to discount the FCE (based on its own notation

that its results should be used cautiously) in light of the record as a whole is not arbitrary and

capricious. *See, e.g.*, *Taurisano v. Carrols Corp.*, No. 97-cv-643, 1999 WL 172320, at *5, 1999

U.S. Dist. LEXIS 3965, at *16 (N.D.N.Y. Mar. 24, 1999) ("In considering whether or not to

grant plaintiff benefits, [First Reliance Standard Life Insurance Company] had before it an

independent FCE, which concluded plaintiff exhibited symptom exaggeration and inappropriate

illness syndrome, and an [Independent Medical Examination], which stated there was no reason

plaintiff could not return to work. Given solely the record before the administrator at the time the

decision to deny benefits was made, the court cannot say the denial was 'without reason,

unsupported by substantial evidence or erroneous as a matter of law.'" (citation omitted));

*Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003) ("Defendant was permitted to

evaluate plaintiff's complaints of pain in light of the totality of her behavior, including the

activity on the surveillance tape and during the non-testing parts of her physical examinations

that was suggestive of dissembling.").

Second, Plaintiff also argues that Defendant acted in an arbitrary and capricious manner

in relying on Dr. Brodey and Dr. Sullivan's opinions. (Dkt. No. 33-1, at 20–21). With respect to

Defendant's reliance on Dr. Brodey's opinion, the Court agrees with Plaintiff that it is unclear

based on the record what explains the discrepancy between his assessment on February 22, 2022,

when Dr. Brodey stated that Plaintiff was "not able to sit any length of time" and was "not able

to tolerate lifting," (R. 1426), and March 30, 2022, when he indicated he agreed that Plaintiff

could perform a sedentary occupation, (R. 1543). However, Plaintiff met with Dr. Brodey for a

follow-up visit on May 4, 2022, (*see* R. 2174–80), and Dr. Brodey confirmed in a form received

on May 19, 2022, that he maintained the same opinion he gave in March, (*see* R. 2090, 2092). Defendant's reliance on Dr. Brodey's assessment that he again affirmed does not appear to be unreasonable.

Plaintiff also objects to Defendant's "citation to the letter that Dr. Sullivan signed on April 4, 2022, seeming to agree with the sedentary limitations proffered by" Defendant when "Dr. Sullivan restricted his agreement to consideration of bilateral lower extremity issues without regard for comorbid upper back issues" and where "Dr. Sullivan's November 14, 2022 opinion deferred to (*i.e.* found no issue with) the FCE." (Dkt. No. 33-1, at 21 (citations omitted)). Regarding Dr. Sullivan's two opinions, the Uphold Letter stated that "[a]t the time benefits ended Dr. Sullivan . . . agreed with [Plaintiff's] ability to engage in sedentary demand activities on a full-time basis," that Dr. Sullivan's medical source statement "noting inability to bear weight on the bilateral lower extremities is inconsistent with the available medical data," and that "[w]hile the information supplied by Dr. Sullivan and the FCE may support [Plaintiff's] continued inability to perform her occupation, they do not support [Plaintiff's] inability to perform sedentary demand work (mostly seated)." (R. 2332). Here too, Defendant provided a reason for its decision-making that is within the bounds of its discretionary authority.

Accordingly, the Court finds the denial of benefits was not arbitrary and capricious and does not represent an inappropriate exercise of Defendant's discretion.

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment, (Dkt. No. 33), is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment, (Dkt. No. 38), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: <u>June 20, 2025</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge